DOMINION FERTILIZER COMPANY *vs.* JAMES G. LYONS.

Aroostook.    Opinion July 1, 1924.

*The construction of a written contract is a question of law for the court.*

In this case the presiding Justice correctly construed the written contract as one of agency.

The plaintiff's son as agent had no legal right to sell the property to pay his own old debts without the assent of the plaintiff.

The jury found that no such assent was given, and their finding is justified by the evidence.

The exclusion of certain alleged conversation between the father and son in the absence of any representative of the plaintiff was proper, as res inter alios acta.

On exceptions and motion.  Assumpsit to recover the purchase price of forty and one half tons of fertilizer, liability for ten and one half tons of which was admitted.  The contention was as to whether the plaintiff sold the fertilizer in question to the son of defendant, or consigned it to him as its agent, the defendant contending that his son sold to him the thirty tons of fertilizer to pay him an old debt he owed to him.  Defendant excepted to the exclusion of certain evidence and filed a general motion for a new trial after a verdict for the plaintiff for the full amount was rendered by the jury.  Motion and exceptions overruled.

The case is sufficiently stated in the opinion.

*John B. Roberts and Powers & Mathews,* for plaintiff.

*A. S. Crawford, Jr.,* for defendant.

SITTING: CORNISH, C. J., PHILBROOK, DUNN, WILSON, STURGIS, BARNES, JJ.

CORNISH, C. J.  This is an action of assumpsit on an account annexed in which the plaintiff seeks to recover the purchase price of

forty and one half tons of fertilizer. The amended account contains three items. As to the first item, a charge for ten and one half tons of fertilizer, the liability of the defendant is admitted. The sole issue is that of the plaintiff's right to recover for the remaining two items in the amended account, aggregating thirty tons. The verdict was for the plaintiff in the sum of $3,049.62, the full amount claimed, and the case is before the Law Court on defendant's exceptions and general motion.

The plaintiff is a fertilizer company with its main office at St. Stephen, N. B., the defendant a farmer in Caribou, Maine.

On March 12, 1921, Mr. Kelley, the plaintiff's representative in Caribou, entered into a written contract with William M. Lyons, the son of the defendant, whereby William became the agent of the plaintiff to sell for it sixty-five tons of fertilizer under the terms and conditions specified in the contract, which was signed by both parties. There can be no question as to the nature of this written instrument. It was an agency contract pure and simple. For a valuable consideration the company agreed to ship on consignment to the agent the agreed quantity and the latter agreed to receive the consignment and to put forth every effort to sell the same, the agent personally guaranteeing the sales. The title to the fertilizer was to remain in the plaintiff until sold by the agent in accordance with the contract. The duties and obligations of the agent are set forth in great detail and at the bottom is this acceptance: "The undersigned accepts the appointment as agent under the foregoing contract and agrees to its terms and conditions. . . . ." This was signed by Wm. M. Lyons.

Of the quantity consigned thirty tons were delivered by order of Wm. Lyons to his father, the defendant, and were used by the latter on his farm in the season of 1921. To collect the price of this quantity, along with the other ten and one half tons concerning which there is no controversy, this suit was brought.

The defendant admitted the receipt and use of these thirty tons, but claimed that while the written contract purported to be one of agency consignment, it was in reality an absolute and unqualified sale to the son, and the latter as the purchaser had title thereto and therefore had the right to transfer and did transfer it to the defendant in part payment of an old debt which the son owed to his father for fertilizer furnished and paid for by the father in the previous

year, 1920, and for which the son had never repaid the father; in other words that the son was taking care of an old debt to the father by delivering to him the thirty tons of phosphate just received by him from the plaintiff in 1921. This was done, as the defendant further claimed, under an oral understanding and agreement with the company's representative, Mr. Kelley, who fully assented to the transaction. These contentions raised an issue of fact.

The issue of law involved the legal construction of the written contract. That was a matter for the presiding Justice and he ruled squarely that it was a contract of agency, a proposition which admits of no legal doubt. One of defendant's exceptions relates to this ruling, but there is no merit in the exception. The fact that all the contracts entered into by the company were in substantially the same form does not affect or modify their nature. Even the contract for the ten and one half tons sold directly to the defendant was of the same tenor. The reason undoubtedly is a protective one on the part of the company, because the agent is made personally liable in case of bona fide sales as he guarantees the sales, and further the fertilizer in each case remains the property of the company until sold in accordance with the terms of the contract.

In argument the counsel for defendant seeks to inject an element of fraud in the execution of the contract, but no such claim was evidently made at the trial, because the presiding Justice in his charge stated the situation as it then appeared as follows: "Now there is a written contract. It does not appear that there was any fraud in connection with it. It is claimed it was not understood, but it does not appear that there was any fraud, and I instruct you that that written contract is binding upon the plaintiff and upon William M. Lyons, and that by virtue of that contract he became not the purchaser but agent for the sale." If there was any claim of fraud this statement by the court should then and there have been challenged. But obviously there was none, no correction was suggested, and it is too late to raise it now even if there were facts to justify the allegation as there are not. If the written contract was not understood by the agent it was his own fault. He says he did not take the pains to read it. It is perfectly plain and unambiguous and it does not lie in his mouth now to complain of its contents.

Such being the situation the court further instructed the jury that William M. Lyons being an agent had no right to sell the fertilizer

to pay his own old debts. No exception was urged against this as a proposition of law. It is conceded to be correct. But the defendant says there was a distinct oral agreement between the representative of the company and the son, and the latter was authorized to dispose of the thirty tons to his father, not for cash but in part payment of his own fertilizer debt of the previous year. This alleged collateral agreement was a question of fact for the jury, it was specifically submitted to them, and they decided against the existence of any such agreement and in favor of the plaintiff's contention. This finding is attacked by the defendant's motion, but the attack is feeble. The only evidence in its support is the testimony of the son, while the representative of the company unqualifiedly denies it. The circumstances corroborate the plaintiff. When the contract was executed the son made and signed a property statement, in which he stated: "My fertilizer for 1920 is all paid," and again under the heading: "I owe on open accounts" is the answer "Nothing on open accounts." These statements are hardly consistent with the making of a collateral agreement based upon the unpaid fertilizer bill of 1920, which must still have been an open account, whether owed to his father or to the company. Moreover, the idea that the plaintiff's representative would have been willing to deliver thirty tons of fertilizer of the value of $2,170 to the agent to be turned over to the father towards the son's old debt, draws heavily upon credulity. It would be in the nature of a gift to a stranger.

The only other exception that is pressed is based upon the exclusion of a certain conversation alleged to have taken place between the son and father wherein the son promised to secure thirty tons on his own credit and deliver it to the defendant to repay him an old debt. This was a matter between themselves. Mr. Kelley was not present, nor was any other representative of the company. It was clearly res inter alios acta and properly excluded.

In conclusion the court is of opinion that there was no error on the part of either the presiding Justice or of the jury, and that substantial justice is represented in the verdict.

*Motion and exceptions overruled.*